UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITIZENS BANK OF MASSACHUSETTS, Successor in Interest to FEDERAL SAVINGS BANK,<br>    Plaintiff<br><br>V.<br><br>PAMELA BAKER COLEMAN and FEDERAL DEPOSIT INSURANCE CORPORATION,<br>    Defendants | DOCKET NO. 1:06-CV-10959-MLW |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF PARTIAL SUMMARY JUDGMENT
(COUNT IV)**

NATURE AND STATUS OF PROCEEDINGS

This is an action, in part, under G.L. c. 214, §3 to reach and apply assets held for the Judgment Debtor, Martin J. Coleman, III, in the name of his wife, Pamela B. Coleman and various realty trusts with which she is associated.[1]  Among these assets are multi-family residences at 331-333 Grove Street and 156-158 Ash Street, both in Waltham, Massachusetts.

By Order dated May 22, 2006 and prior to removal of this action to this Court, the Massachusetts Superior Court (Gants, J.) allowed the Bank's motion for partial summary judgment on Count I of its Amended Complaint alleging a claim for the fraudulent transfer of $450,000.00 paid by the Judgment Debtor to his wife in August, 2004.

---

[1]  To the extent that defendant claims both legal and sole equitable ownership through the respective trusts, her interests merge and the trusts are destroyed.  See, Cunningham v. Bright, 228 Mass. 385 (1917).

Based upon the undisputed facts of record, the Bank now moves for summary judgment upon Count IV of its Amended Complaint as concerns the Grove and Ash Street properties.[2]

STATEMENT OF UNDISPUTED FACTS

The Bank holds a judgment against Martin J. Coleman, III, (the "Judgment Debtor"), dated August 26, 1994, in the principal amount of $609,241.64, which remains wholly unsatisfied.[3] The defendant, Pamela B. Coleman, is the wife of the Judgment Debtor.[4]

On April 4, 1983, the Judgment Debtor acquired a two-family residential property at 331-333 Grove Street, Waltham, and financed its purchase through a first mortgage with Com Fed Savings Bank. The Judgment Debtor refinanced this purchase money mortgage with the First Mutual Bank for Savings ("First Mutual") on April 8, 1988, securing a principal balance of $120,000.00.[5]

The Judgment Debtor acquired a three-family residential property at 156-158 Ash Street, Waltham on April 20, 1984, and financed its purchase through a first mortgage with Baybank Middesex. The Judgment Debtor refinanced this purchase money mortgage with First Mutual on August 27, 1987 securing a principal balance of $250,000.[6]

On March 31, 1989, record title to the Grove Street and Ash Street properties was transferred by the Judgment Debtor to the Grand Realty Trust and Access Realty Trust (the "Trusts"), respectively, for nominal consideration subject to the First Mutual mortgages.[7]

---

[2] Claims as to properties other than Grove and Ash Street within the scope of Count IV are not the subject of this motion.
[3] **Affidavit of David W. Silverstein**, at ¶¶ 4, 5. A copy of the Judgment is attached to the Affidavit as Exhibit A.
[4] **May 31, 2005 Deposition Transcript of Pamela B Coleman (hereafter "P. Coleman 2005 DP")**, at p. 5 (12-18). P. Coleman DP 2005 is authenticated by the Affidavit of Counsel as Exhibit A (hereinafter, references to exhibits to the Affidavit will be identified as "Counsel's Aff. Exh. ___"). See also **Defendant's Answer to Complaint,** at ¶ 2.
[5] Counsel Aff., at ¶ 3. Also see **Mortgage dated April 8, 1988** (Counsel Aff. Exh. B).
[6] Counsel Aff, at ¶ 3. Also see **Mortgage dated August 27, 1987** (Counsel Aff. Exh. C).
[7] **Deeds dated March 31, 1989** (Counsel Aff. Exhs. D & E).

Notwithstanding such record transfers, the Judgment Debtor continued to manage and control both properties as he had upon first acquiring them.[8]

After First Mutual made entry for the purpose of foreclosing its mortgages upon these multi-family properties in 1991, the Judgment Debtor brought a lawsuit against First Mutual seeking, *inter alia*, an Order rescinding each of the mortgages which he had granted.[9] The Judgment Debtor alleged that First Mutual was negligent in its management of the properties upon such entry and that they were so diminished in value as a result that his mortgages should be discharged.[10] In support of his claim, the Judgment Debtor swore by his verified complaint that he was the owner and himself managed each of the Waltham properties, including Ash and Grove Street, notwithstanding his previous transfer of record title to the Trusts.[11]

The Judgment Debtor petitioned for bankruptcy protection on June 21, 1991.[12] Among his other assets, the Judgment Debtor represented by his bankruptcy petition that he owned the entire beneficial interests in both the Grand Realty Trust and Access Realty Trust, through which he swore that he was the sole owner of the Grove Street and Ash Street properties, respectively.[13] At the same time, the Judgment Debtor acknowledged that each of these properties remained subject to the recorded first mortgages which he had granted First Mutual in order to finance their acquisition.[14]

On April 13, 1992, the Judgment Debtor moved for the voluntary dismissal of his bankruptcy petition, alleging that the prospects for his reorganization were "dependent upon the

---

[8] **Verified Complaint filed in Coleman v. First Mutual Bank for Savings, Middlesex Superior Court Civ. A. No. 91-3944** (Counsel Aff., Exh. F).
[9] *Id.*
[10] *Id*.
[11] *Id*.
[12] **Petition filed in the matter of Martin J. Coleman III, United States Bankruptcy Court for the District of Massachusetts, Docket No. 91-Motion to -CJK** (Counsel's Aff. Exh. G).
[13] *Id*, at Schedule B-1, pp. 14-15. At the same time, the Judgment Debtor attributed beneficial ownership of various other properties to his wife.
[14] *Id*.

outcome of the litigation involving the FDIC . . . since most of Debtor's properties (were) encumbered by mortgages held by the FDIC as successor to First Mutual Bank for Savings."[15] Based upon such representation, the Judgment Debtor's motion was allowed and the bankruptcy proceeding dismissed on May 7, 1992.[16]  Notwithstanding record title in the Trusts, the Judgment Debtor's sworn statements unequivocally declare his continuing intent and understanding that the Waltham properties be held for his benefit.

On October 16, 1995, the Judgment Debtor settled his litigation with First Mutual, through its receiver, the Federal Deposit Insurance Corporation ("FDIC").[17]  Through such settlement, the Judgment Debtor, consistent with his prayer for relief, acquired the rights of the FDIC in the first mortgages granted First Mutual against the Grove Street and Ash Street properties and the promissory notes secured thereby, but either released the same to his wife or allowed them to be taken in her name.[18]  Such mortgage assignments remain unrecorded but subject to the control of either the Judgment Debtor or his wife.[19]  The unrecorded assignments have the effect of establishing (and concealing) equity in each of the properties by the amount of the outstanding mortgage balance due on each since discharge could simply be directed either by the Judgment Debtor or his wife and recorded at their discretion.[20]  Defendant released her husband from any obligation to pay the mortgage loans.[21]

---

[15] **Motion to Voluntarily Dismiss Bankruptcy Petition, filed by Judgment Debtor** (Counsel's Aff. Exh. H).
[16] United States Bankruptcy Court, District of Massachusetts, Docket No. 91-15306-CJK.  Counsel's Affidavit, at ¶ 8.
[17] **Settlement Agreement dated October 16, 1995 as authenticated by Pamela Coleman's Answers to Plaintiff's Second Set of Interrogatories**, at No. 1 (Counsel Aff. Exh. I).  See also, Agreement for Judgment in the present case as to the FDIC.
[18] *Id*.
[19] **Pamela Coleman's Answers to Plaintiff's Second Set of Interrogatories**, at No. 3, 4 (Counsel Aff. Exh. J).
[20] In fact, this is exactly what occurred with regard to four other First Mutual mortgages subject to the same assignment scheme.  On November 28, 1998, Pamela Coleman recorded the assignment and discharged the mortgage against 28-30 McKenn Street in Waltham, so that the property could be sold to a third-party the same day.  See Counsel Aff., at ¶ 11.  On January 31, 2001, she discharged the mortgage against 19-21 Mt. Pleasant Street in Waltham so that she could sell the property to a third-party the same day.  See Counsel Aff., at ¶ 12.  On September 28, 2001, she discharged the mortgage against 46-48 Lyman Street in Waltham, and immediately obtained a new $380,000.00 mortgage loan the same day.  See Counsel Aff., at ¶ 13.  Finally, on December 22, 2004, Pamela

Pamela Coleman gave no consideration for her receipt of the mortgages which had been given to First Mutual by her husband, and the promissory notes secured thereby.[22] She now claims to own the properties herself. Any claimed beneficial interest by her in the subject properties is in direct conflict with the Judgment Debtor's sworn allegations of ownership by verified complaint upon which dismissal of his bankruptcy and the FDIC's assignment were based.[23]

ARGUMENT

At all times relevant, the Judgment Debtor owned the Grove and Ash Street properties through continuing beneficial interests in the Trusts. He borrowed the money to acquire these properties, refinanced with First Mutual, and granted mortgages against each in order to secure repayment. This was the sole source of consideration for the acquisition of each property. He affirmed his continuing interest through both his sworn schedule supporting his bankruptcy petition and in the verified complaint which he brought against First Mutual and continued to prosecute to conclusion against the FDIC as its receiver to the end that the mortgage obligations were effectively satisfied. By his verified complaint, the Judgment Debtor swore that he was the owner of all seven multi-family dwellings financed through First Mutual Bank and that the arbitration proceeding which was the gravaman of his claim distracted him from his management responsibilities. Verified Complaint, at ¶ 69 (Counsel Aff. Exh. F). As the owner of such properties, the Judgment Debtor demanded relief through that litigation rescinding the subject mortgages. As concerns these properties, the litigation was brought and prosecuted by the

---

Coleman recorded the assignment and discharged the mortgage against 70-72 Central Street in Waltham, so that she could take a $600,000.00 equity line against the property the same day. See Counsel Aff., at ¶ 14.

[21] **Agreement between Judgment Debtor and defendant dated December 4, 1995**, ¶ 3 (Counsel Aff. Exh. J).

[22] **Pamela Coleman's Answers to Plaintiff's First Set of Interrogatories**, at No. 27.

[23] To the extent that defendant claims any such interest by transfer after the date of her husband's verified complaint and bankruptcy petition, it is readily apparent that the same would itself constitute a fraudulent conveyance. There is no record evidence of any such conveyance, nor has any been identified though discovery to date. To the extent that defendant relies upon a pre-existing interest, mere contradiction of her husband's sworn statements in his bankruptcy schedule and verified complaint are insufficient to raise a disputed fact of record as a matter of law.

Judgment Debtor in his own interest, consistent with the factual allegations contained in his verified complaint which were never altered or otherwise amended through the conclusion of the case.

In October 1995, the FDIC essentially conceded to the Judgment Debtor's demand for relief based upon such allegations and entered into a settlement agreement which, *inter alia,* relinquished its continuing rights in the subject notes and mortgages. Rather than discharge the notes and mortgages, arrangements were made for the assignment of such assets by way of compromise with the FDIC. Through such agreement, the Judgment Debtor released the spoils gained as a result of his successful prosecution of the litigation – the subject notes and mortgages – to his wife. Under such arrangement, the FDIC granted the wife its assignment of the Grove and Ash Street mortgages. She continues to hold such unrecorded assignments, whether in her own right or at her husband's direction.

The practical benefit of such assignments is readily apparent and amounts to an immediate realization of equity in each property equal to the loan balance. Mortgages remain of record, but as between the spouses no payments have been made upon them. In effect, the Judgment Debtor and his wife simply own and control mortgages against their own properties in a manner which hides the equity gained through the Judgment Debtor's settlement with the FDIC.

"A resulting trust in real estate arises where one party furnishes the consideration to purchase property, not intending a gift or advancement, yet title is taken in the name of another." Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994); See also Richmond v. Tankenow, 2000 Mass. Super. LEXIS 304, **10 (Worcester Sup. Ct., June 6, 2000) (Fecteau, J.). Such consideration includes the circumstance where the purchase price is borrowed from a lender, rather than paid directly to a seller. See Restatement, Second, Trusts, §451. While there

is a presumption when a husband pays the consideration for a conveyance to his wife that he intends it to be a gift, such presumption is rebutted where the party paying the consideration exercises control over the property.  Krasner v. Krasner, 362 Mass. 186, 189 (1972);  See also, Checovich v. Checovich, 339 Mass. 71, 73 (1959) (resulting trust arose where evidence of control included receiving rents, paying mortgage and costs of repairs).

All consideration given for the purchase of the Grove and Ash Street properties was undisputedly paid by the Judgment Debtor.  He first acquired the properties in his own name and subsequently transferred title to the respective trusts for nominal consideration subject to his continuing purchase money mortgage financing.  The Judgment Debtor was solely liable to First Mutual on the purchase money mortgage used to acquire both properties.  He effectively accomplished satisfaction of those obligations through his successful prosecution of claims against First Mutual and, as a result, the defendant holds title free and clear of all purchase liens.

The presumption of a gift is plainly rebutted under the present circumstances by the Judgment Debtor's express and sworn acknowledgements that he remained the owner and manager of the properties notwithstanding transfer of record title to the Trusts in 1989.  He disavowed any intent to make an outright gift through his continued exercise of dominion and control.  He managed the properties following transfer of record title as did the plaintiff in Checovich.  He brought and successfully prosecuted litigation to defend his declared interest.  The mere contradiction of such testimony offered by affidavit in response is insufficient to raise a material issue of disputed facts sufficient to withstand summary judgment.  See e.g., O'Brien v. Analogue Devices, Inc. 34 Mass. App. Ct. 905 (1993);  ("The plaintiff's affidavit is not some sort of wand that can waive away the damage to his claim contained in testimony previously given … .);  Morrell v. Precise Engineering, Inc., 36 Mass. App. Ct. 935 (1994).

Having previously availed himself of the benefit of such prior statements, he is judicially estopped from denying the same here. The Judgment Debtor represented to the Bankruptcy Court that his bankruptcy should be dismissed pending the outcome of the FDIC litigation, because most of his properties were subject to mortgages granted First Mutual which were in dispute and his reorganization was dependent upon such resolution. By implication, his creditors were the intended beneficiaries of such claims rather than his wife. However, notwithstanding successful negotiations with the FDIC resulting in the assignment of the subject mortgage interests, any prospective benefit to creditors, like the Bank here, was avoided upon dismissal of the bankruptcy petition. Instead, the defendant now claims that, all along, she was the one who actually owned the properties.

> When property has been acquired under such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

Cardozo, C.J. in <u>Beatty</u> v. <u>Guggenheim Exploration Co.</u>, 225 NY 380, 122 NE 378 (1919).

CONCLUSION

For the reasons stated, the plaintiff, Citizens Bank of Massachusetts, demands that its motion for summary judgment on Count IV of its Amended Complaint be allowed consistent with the prayer contained in its motion.

CITIZENS BANK OF MASSACHUSETTS,

By its attorneys,

    /s/ Christopher T. Meier
Robert L. Hamer, BBO #218715
Christopher T. Meier, BBO # 640995
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: August 29, 2006